**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

Summary Calendar
No. 98-50644

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

TIMOTHY JADON WASHINGTON

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

(W-97-CR-129-1)

April 20, 1999

Before DAVIS, DUHÉ, and PARKER, Circuit Judges.

PER CURIAM:[*]

After denying Appellant's Motion to Suppress, Appellant was convicted of unlawfully, knowingly, and intentionally possessing at least 50 grams of cocaine base (crack cocaine) with intent to distribute in violation of 21 U.S.C. § 841(a)(1) in a bench trial on stipulated facts. Appellant contends the district court erred in denying his Motion to Suppress and that the sentencing guidelines, as applied, violated his right to equal protection. We AFFIRM.

## I. FACTS AND PROCEEDINGS

On November 2, 1997, at approximately 5:00 a.m., Officer Henson ("Officer Henson") of the Groesbeck Police Department observed a vehicle parked on the shoulder of the roadway. At the time Officer Henson saw the vehicle, he was traveling south and the vehicle was facing north. As Officer Henson passed the vehicle, it pulled onto the roadway and began traveling north.

Officer Henson turned the police car around and began following the vehicle. Officer Henson ran a routine check on the license plate and learned that the registration had expired. He stopped the

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

vehicle.

The driver pulled his vehicle over immediately. As Officer Henson exited his car, the driver placed both of his hands outside the driver's window without any request by the officer. Officer Henson informed the driver he had been stopped because his registration had expired and requested his driver's license. The driver produced his license which identified him as Timothy Jadon Washington ("Washington").

Officer Henson questioned Washington about the expired registration. Washington explained that he recently purchased the vehicle and that the dealer's tag was in the back window. When Officer Henson observed that the tag was not in the back window, Washington replied that a temporary tag was in the trunk. Washington opened the trunk with a latch inside the car and offered to retrieve the license from the trunk.

Washington walked to the trunk and produced a temporary purchaser's tag. When Officer Henson learned this tag had expired also, he called for backup. At this time, Officer Henson questioned Washington about his destination. Washington stated he was on his way home to Houston from Waco. Officer Henson testified that the location of Washington's vehicle was not on a normal route from Waco to Houston.

After questioning Washington, Officer Henson requested identification from the passenger. The passenger produced a driver's license which identified him as Bevrick Briscoe ("Briscoe"). Officer Henson questioned Briscoe about the vehicle's destination. Briscoe explained that the two men were traveling to visit a friend in Mexia.

Officer Henson asked Washington whether there was any illegal contraband in the vehicle. Washington responded: "No, you can search it." While Officer Henson did not request written consent, the consent was witnessed by the backup officer, Javier Ybarra ("Officer Ybarra"). Officer Henson conducted a brief search of the vehicle and found two baggies that appeared to contain crack cocaine. Upon locating the baggies, Washington and Briscoe were placed under arrest for investigation of possession of a controlled substance. Officer Henson then conducted a further search of the vehicle, revealing two more baggies: one with crack cocaine and one containing approximately $3,000.

Washington filed a Motion to Suppress the evidence, alleging the evidence was the result of an illegal detention. Further, Washington contends he did not consent to the search of his car. The District Court denied the Motion to Suppress, finding that Washington was not illegally detained, and further, that he consented to the search of the vehicle. Under the United States Sentencing Guidelines

-2-

("U.S.S.G."), the judge imposed a 168-month period of incarceration.

## II.  STANDARD OF REVIEW

We review the district court's factual findings for clear error and its conclusions regarding the constitutionality of a warrantless search *de novo*.  *See United States v. Tompkins*, 130 F.3d 117, 119-20 (5th Cir. 1997).  The voluntariness of consent to a warrantless search is a finding of fact reviewed for clear error.  *See id.* at 120.  Constitutional challenges to sentencing guidelines are reviewed *de novo*.  *See United States v. Guajardo*, 950 F.2d 203, 206 (5th Cir. 1991).

## III.  DISCUSSION

Washington raises three arguments on appeal.  He argues that the district court erred by failing to suppress the evidence found during the search of the automobile and that the district court erred in finding voluntary consent.  Further, Washington argues that Federal Sentencing Guideline §4A1.1, as applied, violates his right to equal protection.  We will address these issues in turn.

### A.  Length of Detention

The Fourth Amendment prohibits unreasonable searches and seizures.  It is clear that "[a] routine traffic stop is a limited seizure that closely resembles an investigative detention."  *United States v. Shabazz*, 993 F.2d 431, 435 (5th Cir. 1993) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)).  Further, where an individual is stopped for violating a traffic law, the Supreme Court and the Fifth Circuit have analyzed the case under *Terry v. Ohio*, 392 U.S. 1 (1968).  *See Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (per curiam);  *United States v. Kelley*, 981 F.2d 1464 (5th Cir. 1993).

In *Terry*, the Supreme Court promulgated the "reasonable suspicion" exception to a seizure without probable cause.  The *Terry* Court stated that where there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime, limited searches and seizures are permissible under the Fourth Amendment.  Thus, in justifying a limited stop of an automobile, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Id.* at 21.  To determine whether the "reasonable suspicion" standard has been met, the Court created a two-part inquiry:  (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place.  *See Terry*, 392 U.S. at 19.

The officer's actions, under the first part of the inquiry, were justified.  Washington does not argue, nor could he, that the initial stop of the vehicle for expired tags was improper.  When the license plate check showed Washington's registration expired, Officer Henson clearly had "specific

and articulable facts" to justify a reasonable suspicion that Washington committed the crime of operating a vehicle with an expired license plate. *See* Tex. Transp. Code Ann. § 502.407 (West 1997) (effective Sept. 1, 1995).

Washington argues that the detention exceeded the reasonable scope of the stop's original purpose and thus violated the second part of the *Terry* inquiry. The facts available to Officer Henson, however, constituted reasonable suspicion to justify further detention. Officer Henson observed Washington's vehicle on the roadside before dawn. His suspicions were aroused when the vehicle pulled onto the roadway as the officer's vehicle approached. Officer Henson ran a check on the license plate and learned that the vehicle's registration had expired. When Officer Henson stopped Washington's vehicle, Washington stuck his hands through the window without the Officer's request or order. Washington could not readily locate his registration tags. Washington gave an unusual explanation about his travel from Waco to Houston, the presence of Washington's vehicle in Groesbeck was not on a normal route to Houston and, in fact, Washington was traveling in the opposite direction. Finally, the passenger gave a conflicting story about their destination. Under the circumstances of this case, the officer developed a reasonable suspicion, through specific and articulable facts, that criminal activity was being committed, and thus, justified the scope of the initial detention.

### B. Consent

The voluntariness of the consent is determined from the totality of the circumstances surrounding the search. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973). Relevant factors relating to voluntariness include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *See United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988) (citations omitted). "[N]o single factor is dispositive or controlling of the voluntariness issue." *Id.*

Applying these factors to this case, the district court was not clearly erroneous in concluding that Washington's consent was voluntary. Officer Henson asked Washington if there was any contraband in his vehicle. Washington stated: "No, you can search it." Officer Ybarra heard Washington give consent to search the vehicle. The record does not reflect any evidence that Officers Henson or Ybarra used any coercive procedures. Washington was fully cooperative with the Officer throughout the entire stop and voluntarily consented to the search.

-4-

C. Application of Sentencing Guideline § 4A1.1

A criminal defendant accumulates criminal history points for prior convictions. A defendant earns three (3) points for a "prior sentence of imprisonment" exceeding 13 months, U.S.S.G. § 4A1.1(a); two (2) points for a "prior sentence of imprisonment" of at least 60 days but less than 13 months, U.S.S.G. § 4A1.1(b); and one (1) point for "each prior sentence not counted in (a) or (b)." U.S.S.G. § 4A1.1(c).

With respect to criminal history, Washington's prior offenses gave him ten (10) criminal history points. Washington's criminal history points included two offenses where he accepted jail terms rather than probation. In 1991, Washington pleaded guilty to assault and received a sixty-day jail sentence. On the same day, Washington also pleaded guilty to unlawful carrying of a weapon and received a second sixty-day sentence. Under U.S.S.G. § 4A1.1(b), Washington received four (4) criminal history points for the two offenses. If Washington had accepted probation, he would have received only two (2) points for the two offenses. *See* U.S.S.G. § 4A1.1(c).

Washington disputes the computation of his criminal history points, contending that the application of U.S.S.G. § 4A1.1 violated his right to equal protection. Specifically, Washington argues that many poor defendants are unable to afford the costs associated with probation or they are unable to post bond, and thus, have no choice but to plead guilty and take the jail term. By selecting a jail term rather than probation, poor defendants receive a higher criminal history score – two points under § 4A1.1(b) versus one point for probation under § 4A1.1(c).

For Washington, the effect of this difference is a different criminal history category, and thus, a different sentencing range under the guidelines. In this case, Washington received a criminal history category of V based on ten (10) criminal history points. Washington contends, that if he had been able to afford probation or post bond for the two convictions in 1991, he would have had a criminal history of IV based on eight (8) criminal history points. With Washington's base offense level of thirty-one (31), a criminal history category of V results in a sentencing range of 168-210 months while a criminal history category of IV results in a lower sentencing range of 151-188 months. The judge sentenced Washington to a 168-month period of incarceration.

Washington does not allege that Congress adopted the sentencing provisions with a discriminatory purpose or that poverty is a suspect class. Accordingly, the standard of review for Washington's equal protection claim is the rational basis test. *See United States v. Cherry*, 50 F.3d 338, 343-44 (5th Cir. 1995); *Guajardo*, 950 F.2d at 207 n.7. "The penalty scheme will survive the equal protection challenge if this Court finds the scheme rationally related to a legitimate government

purpose." *See Cherry*, 50 F.3d at 344 (citing *United States v. Galloway*, 951 F.2d 64, 66 (5th Cir. 1992)).

The sentencing scheme has a rational basis related to a number of penological goals.[1] As the introductory commentary to U.S.S.G. § 4A1.1 states, "[a] defendant with a record of prior criminal behavior is more culpable t han a first offender and thus deserving of greater punishment." The sentencing scheme also serves to generally and specifically deter criminal conduct. Further, the sentencing scheme protects the public from individuals who are likely to commit future crimes. *See generally*, U.S.S.G. Ch. 4, Pt. A, intro. comment., at 4.1 (referencing retribution, deterrence, restraint, and the limited likelihood of rehabilitation). Section 4A1.1, as applied, did not violate Washington's right to equal protection.

IV. CONCLUSION

Accordingly, we AFFIRM.

---

[1] The government also argues that Washington made a voluntary choice of jail time rather than probation. Washington was not denied probation because he could not pay a fine or supervision fees.